<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT</u>

I, Lavinia A. Quigley, being duly sworn, hereby depose and state as follows:

**A.    Introduction**

1.     I am a Police Officer with the Metropolitan Police Department (MPD), in Washington, D.C.  I have been a sworn officer with MPD since 1989.  My current rank is a Detective, second grade, and I have been assigned to the Major Narcotic Branch of the Criminal Investigations Division, or its predecessors, since August 1994.  Before this assignment, I worked with the MPD Rapid Deployment Unit for four years, specializing in vice, narcotics, and gun-recovery investigations.  Throughout my law enforcement career, I have attended classes, seminars, and special training sessions on the manufacture, packaging, use, and distribution of controlled substances, as well as the detection and apprehension of narcotics traffickers.

2.     I have served as an undercover officer buying illegal narcotics for six years and have made more than 1000 undercover purchases of illicit drugs of all kinds, including cocaine powder, crack cocaine, marijuana, and heroin.  Because of my experience, I am frequently called upon to assist in federal narcotics investigations by making undercover purchases of illegal drugs for such agencies as the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), and the Bureau of Alcohol, Tobacco, and Firearms (ATF).  In the course of my police duties, I have interviewed hundreds of persons arrested in Washington, D.C., Maryland, and Virginia engaged in the illegal narcotics trade concerning their unlawful activities.  Further, I have spent many hundreds of hours engaged in secret surveillance of persons involved in illegal narcotic activity.  I also have participated in a number of long-term vice investigations that have resulted in prosecutions in federal and local courts in Washington, D.C.  As a result, I often have testified in federal and local courts. I have also served as the affiant for more than 200 narcotics or firearm search warrants issued by

judges of the Superior Court of the District of Columbia and the U.S. District Court for the District of Columbia.

3.     I make this affidavit in support of an application by the United States of America for the issuance of a criminal complaint and arrest warrant charging ISMAEL WAZIRY with conspiracy, in violation of Title 18, United States Code, Section 371. The facts set forth in this affidavit are based upon my own personal knowledge; knowledge obtained from other individuals, including law enforcement officers and industry representatives; my review or the review by other law enforcement officers of documents and of audio and video recordings of undercover law enforcement activities related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; consultations with technical experts both in law enforcement and industry; and information gained through my training and experience. Among the industry experts consulted during this investigation is Blazer Investigations whose private investigators have received extensive training from the manufacturers of trademarked goods, including Louis Vuitton, Gucci America, Inc, Burberry of England, Kate Spade, and Coach, in the recognition of counterfeit goods and who have experience assisting the FBI, United States Customs, and State and local police agencies in the detection of counterfeit goods.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a criminal complaint and arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

### B.     Background

4.     In December 2004 the Spotsylvania County Sheriff's Office, in Spotsylvania, Virginia, executed search warrants on two locations suspected of trafficking in counterfeit products.

2

Seized during execution of the search warrants was over $150,000 in retail value of counterfeit purses and wearing apparel. During the search of one of the locations, business and financial records were uncovered linking the illegal Virginia based activity to businesses located in the 1300 block of 4th Street, N.E., Washington, D.C.

5.      In January 2005 your affiant was contacted by Mr. Edward J. Doyle, Director of the Financial Crime Intelligence Center, Virginia Attorney General's Office, regarding the investigation of businesses trafficking in counterfeit goods in the 1300 block of 4th Street, N.E., Washington, D.C. Mr. Edward J. Doyle has been the Director of the Financial Crime Intelligence Center for the Office of the Attorney General of Virginia since June 2002. Mr. Doyle is also a sworn Auxiliary Deputy Sheriff with the rank of Detective with the Spotsylvania County Sheriff's Office. Prior to his current employment, Mr. Doyle was employed by the U.S. Department of the Treasury's Financial Crime Enforcement Network (FinCEN), the U.S. Central Intelligence Agency, the Illinois Department of Law Enforcement's Division of Criminal Investigation, and the Illinois Legislative Investigating Commission. He has over 35 years of experience in organized crime and drug related law enforcement and intelligence work; has participated in, conducted, and directly or indirectly supervised over 1,500 criminal investigations relating to money laundering; and has participated in over 15 counterfeit trademark cases.

6.      From January 2005 through the present, your affiant, along with Detective Doyle and other members of the Washington DC Metropolitan Police Department's Major Narcotics Unit, Major Case Squad, conducted an investigation relating to the sale of counterfeit products by WAZIR MARBLE AND GENERAL MERCHANDISE, located at 1329 4th Street, NE, Washington, D.C., in violation of Title 18, United States Code, Sections 371 and 2320. According to Virginia State

3

Corporation Commission Records, the Directors of this company include ISMAEL WAZIRY and Shah Waziry who both reside at xxxx xxxxxx xxxxx, McLean, Virginia. The investigation included surveillance of the premises and undercover purchases from the business. Based upon this investigation, it is clear that ISMAEL WAZIRY, as well as other managers and employees of WAZIR MARBLE AND GENERAL MERCHANDISE at 1329 4th Street, NE, Washington, D.C, are engaged in the commercial sale of counterfeit products to members of the public.

### C.    Relevant Code Sections

7.    Title 18, United States Code, Sections 371 and 2320 provide in pertinent part:

Section 371:
If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Section 2320:
**(a)**    Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000.

**(b)**    Upon a determination by a preponderance of the evidence that any articles in the possession of a defendant in a prosecution under this section bear counterfeit marks, the United States may obtain an order for the destruction of such articles.

**... (e)**    For the purposes of this section –
    **(1)**    the term "counterfeit mark" means –
        **(A)**    a spurious mark
            **(i)**    that is used in connection with trafficking in goods or services;
            **(ii)**    that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and
            **(iii)**    the use of which is likely to cause confusion, to cause

4

mistake, or to deceive. . . .

**(2)**    the term "traffic" means transport, transfer, or otherwise dispose of, to another, as consideration for anything of value, or make or obtain control of with intent to so transport, transfer, or dispose of. . . .

**D.    The Investigation**

**1.    January 26, 2005, Undercover Purchase**

8.    On January 26, 2005, acting on information that businesses located in the 1300 block of 4th Street, NE, Washington, D.C., were trafficking in counterfeit handbags, your affiant proceeded to Washington Perfume and Watch Center, also doing business as WAZIR MARBLE AND GENERAL MERCHANDISE, located at 1345 4th Street, NE, Washington, D.C., to purchase counterfeit handbags.  Your affiant engaged in a conversation with an unidentified man ("UM"), asking him if they had any brand name - meaning counterfeit - pocketbooks for sale.  The UM told your affiant that she would have to go to "our other" store five doors down, WAZIR MARBLE AND GENERAL MERCHANDISE, located at 1329 4th Street, NE, Washington, D.C.

9.    Your affiant then proceeded to 1329 4th Street, NE, location of WAZIR MARBLE AND GENERAL MERCHANDISE.  Once inside, your affiant engaged in a conversation with two males, subsequently identified as ISMAEL WAZIRY and QUDRAT WAZIRY.  QUDRAT WAZIRY assisted your affiant in selecting seven counterfeit handbags, two Coach, one Gucci, one Chanel, two Prada, and one Louis Vuitton, along with two counterfeit Gucci wallets, for purchase. Your affiant paid ISMAEL WAZIRY $168 in MPD funds and was given a receipt for the items.  All items purchased during this undercover visit were later inspected by a private investigator from Blazer Investigations and found to bear counterfeit marks, that is, spurious marks which are identical with, or substantially indistinguishable from, marks that are registered for those goods on the

5

principal register in the United States Patent and Trademark Office and are in use, pursuant to Title 18, United States Code, Section 2320.

### 2. April 25, 2005, Undercover Purchase

10. On April 25, 2005, your affiant, along with a Cooperating Witness (CW), proceeded to WAZIR MARBLE AND GENERAL MERCHANDISE, 1329 4th Street, NE, Washington, D.C., for the purpose of purchasing counterfeit products again. Upon entry, your affiant and the CW were met by ISMAEL WAZIRY. The CW greeted ISMAEL WAZIRY and told him the CW and your affiant were looking for some handbags. ISMAEL WAZIRY spoke in Farsi to another man, subsequently identified as QUDRAT WAZIRY, who was conducting business behind the counter. QUDRAT WAZIRY then directed the CW and your affiant to follow him into the back of the store.

11. Your affiant and CW proceeded to a storage room in the back of the store where QUDRAT WAZIRY displayed counterfeit handbags bearing what appeared to be counterfeit trademarks of Louis Vuitton, Coach, Gucci, Prada and Burberry. Your affiant noted there were several hundred handbags both in boxes and stacked loosely throughout the storage room. QUDRAT WAZIRY told your affiant that the Louis Vuitton purses would cost $26 but that if they bought several pieces he would only charge $25. QUDRAT WAZIRY said the Prada and Gucci bags were $18 apiece and that Coach bags were $22 and Coach fabric bags were $25.

12. QUDRAT WAZIRY showed your affiant and the CW several models and styles of counterfeit purses, each bearing what appeared to be a counterfeit trademark logo or design, and he explained which brands were the best sellers. Your affiant and the CW selected several counterfeit bags for purchase and then proceeded with QUDRAT WAZIRY up to the front of the store. Your affiant noted that handbags bearing what appeared to be counterfeit trademark logos and designs

were displayed not only along the wall of the store, but also in open boxes in the aisle. Also displayed in the store were shoes, belts, hats and other apparel bearing what appeared to be counterfeit trademark designs and logos.

13.    Once at the front counter, QUDRAT WAZIRY displayed counterfeit wallets along with counterfeit Fendi and Christian Dior purses, stating the purses would cost $35 each. When asked how much your affiant could charge for the purses, QUDRAT WAZIRY stated for the $18 purse your affiant could charge $65, adding that one of his customers charges several hundred dollars for a $26 counterfeit Louis Vuitton purse. QUDRAT WAZIRY then added up the sale, computing the cost on a calculator and writing a receipt. During this time, ISMAEL WAZIRY was standing in back of your affiant and the CW, facing the counter, talking on a cell phone. Your affiant paid QUDRAT WAZIRY $228 in MPD funds for the handbags, as well as wallets, bearing counterfeit reproductions of federally registered trademarks, specifically Louis Vuitton, Coach, Prada, Gucci, Fendi and Christian Dior. QUDRAT WAZIRY put the money in his pocket. After the transaction, QUDRAT WAZIRY wrote his name on a business card which he presented to your affiant along with the receipt for the purchase. All items purchased during this undercover visit were later inspected by a private investigator from Blazer Investigations and found to bear counterfeit marks, that is, spurious marks which are identical with, or substantially indistinguishable from, marks that are registered for those goods on the principal register in the United States Patent and Trademark Office and are in use, pursuant to Title 18, United States Code, Section 2320.

**3.    May 12, 2005, Undercover Purchase**

14.    On May 12, 2005, your affiant and the CW entered WAZIR MARBLE AND GENERAL MERCHANDISE, 1329 4th Street, NE, Washington, D.C., for the purpose of purchasing

counterfeit products again.  Your affiant and the CW were greeted by ISMAEL WAZIRY and were approached by an individual who later identified himself as "Abdul," subsequently identified as ABDUL JALIL WAZIRY.  In the presence of your affiant, the CW told ABDUL JALIL WAZIRY that he and your affiant wanted to buy some purses, including Louis Vuitton, Channel, Prada, Fendi and Coach.  ABDUL JALIL WAZIRY directed your affiant and the CW to a room located at the back of the store.

15.    Once in the back, ABDUL JALIL WAZIRY displayed several purses bearing what appeared to be counterfeit trademarks, including counterfeit Gucci, Coach, Prada and Louis Vuitton purses. ABDUL JALIL WAZIRY told Your Affiant to select what your affiant wanted.  After some review of the merchandise, your affiant asked where QUDRAT WAZIRY was, adding that your affiant had done business with him before and that he had given your affiant a good price on purchases. QUDRAT WAZIRY then approached your affiant and the CW and provided your affiant with what appeared to be a catalogue for Louis Vuitton products.  QUDRAT WAZIRY told your affiant to pick out what products she wanted and it would take him about 10 to 15 minutes to return with her order.  Your affiant selected eight items from the catalogue which QUDRAT WAZIRY copied down on a piece of paper.  QUDRAT WAZIRY told your affiant that the purchase price for the eight items would be $200, said he would be back in 10 minutes, and exited from view.

16.    Your affiant notified surveillance units via her cell phone to be on the lookout for a male with dark hair, wearing a checked shirt, who may have exited the store from a rear door.  At that time, Detective Doyle observed a man, later identified as QUDRAT WAZIRY, wearing a plaid shirt walking from the vicinity of the rear of WAZIR MARBLE AND GENERAL MERCHANDISE, up an alley, past a truck unloading merchandise into the rear of another business.  QUDRAT

8

WAZIRY, who was holding a piece of paper in his hands, proceeded to a metal garage type door located at the rear of Washington Perfume and Watch Company, 1345 4th St., NE, Washington, D.C. The grey steel door has the number "2" written in white on the door. The door was locked with a padlock located on the right side. Detective Doyle observed QUDRAT WAZIRY open the lock, raise the door, and enter what appeared to be a storage facility.

17.    Moments later, Detective Doyle and other members of the surveillance team observed QUDRAT WAZIRY exit the storage locker carrying a large black plastic bag containing items later identified to be eight counterfeit purses. Detective Doyle observed QUDRAT WAZIRY lower the metal door, lock the storage site and proceed back up the alley to the rear entrance of WAZIR MARBLE AND GENERAL MERCHANDISE, 1329 4th Street, NE.

18.    During QUDRAT WAZIRY's absence, Your affiant and the CW engaged in a conversation with ISMAEL WAZIRY regarding business. Your affiant also noted that ISMAEL WAZIRY was frequently distracted by calls received on his cell phone. Approximately seven minutes after his departure, QUDRAT WAZIRY reappeared from the rear of the store carrying a black plastic bag containing eight counterfeit purses which he placed on the floor in front of Your Affiant. Upon his re-entry to the store, QUDRAT WAZIRY and ISMAEL WAZIRY engaged in a conversation in Farsi.

19.    While your affiant inspected the counterfeit Louis Vuitton purses, QUDRAT WAZIRY told Your Affiant to be careful with them, in the sense that re-selling them would be risky. Your affiant responded that they would be sold at a purse party and not at the kiosk. Your affiant then asked QUDRAT WAZIRY about Louis Vuitton wallets. QUDRAT WAZIRY went up into what appeared to be an attic or second floor of the store and returned a few moments later with a

counterfeit Louis Vuitton wallet which he presented to your affiant.  QUDRAT WAZIRY told your affiant that he would provide her with a catalogue for her use in ordering in the future.  Your affiant paid QUDRAT WAZIRY $202 in MPD pre-recorded funds which he again placed in his pocket. QUDRAT WAZIRY provided your affiant with a receipt for the purchase.  All items purchased during this undercover visit were later inspected by a private investigator from Blazer Investigations and found to bear counterfeit marks, that is, spurious marks which are identical with, or substantially indistinguishable from, marks that are registered for those goods on the principal register in the United States Patent and Trademark Office and are in use, pursuant to Title 18, United States Code, Section 2320.

### 4.    November 2, 2005, Undercover Purchase

20.    On November 2, 2005, your affiant proceeded to WAZIR MARBLE AND GENERAL MERCHANDISE, 1329 4th Street, NE, Washington, D.C., for the purpose of verfiying that counterfeit goods were still being sold from the premises.  Your affiant met ISMAEL WAZIRY upon entering the store and told him your affiant wanted to purchase Louis Vuitton handbags. ISMAEL WAZIRY instructed your affiant to wait and that someone would assist your affiant soon. QUDRAT WAZIRY appeared and gave your affiant some papers showing different Louis Vuitton products.  QUDRAT WAZIRY asked your affiant to choose which of those products your affiant wanted to purchase.  Your affiant used an eyeliner pencil to place marks next to each of the products your affiant chose to buy and told QUDRAT WAZIRY that your affiant wanted to purchase twenty handbags.  QUDRAT WAZIRY asked your affiant to wait a moment while QUDRAT WAZIRY finished with another customer.  QUDRAT WAZIRY returned and went over your affiant's selections, stating which products WAZIR MARBLE AND GENERAL MERCHANDISE had and

did not have.  QUDRAT WAZIRY then took the paper and told your affiant to wait ten minutes.

QUDRAT WAZIRY exited the store and entered a gold 2000 Lexus ES300, Virginia license plate

number WAZIR1, Vehicle Identification Number JT6HF10U0Y0154091.  Surveillance teams

followed QUDRAT WAZIRY as he drove to Budget Storage on New York Avenue, NE, exited his

car and then returned a short time later.  QUDRAT WAZIRY was observed to place several blue

bags containing pocketbooks into the Lexus and return to the store.  Your affiant observed QUDRAT

WAZIRY enter the store holding the blue bags containing handbags.  QUDRAT WAZIRY handed

one of the blue bags to your affiant, stating, "this one is yours."  Your affiant examined the contents

of the bag and counted thirteen Louis Vuitton handbags.  QUDRAT WAZIRY left the store to

retrieve additional handbags for your affiant and was observed by the surveillance team going to the

storage facility with the metal garage type door  upon which the number "2" was written, located in

the alley to the rear of Washington Perfume and Watch Company, 1345 4th Street, NE, Washington,

DC., and parallel to 4th Street.  QUDRAT WAZIRY returned with numerous Louis Vuitton

handbags.  Your affiant agreed to purchase some of those bags too for a total of twenty-six Louis

Vuitton handbags and in exchange your affiant paid QUDRAT WAZIRY $560 in MPD funds.  All

items purchased during this undercover visit were later inspected by a private investigator from

Blazer Investigations and found to bear counterfeit marks, that is, spurious marks which are identical

with, or substantially indistinguishable from, marks that are registered for those goods on the

principal register in the United States Patent and Trademark Office and are in use, pursuant to Title

18, United States Code, Section 2320.

>    **E.    Conclusion**

11

21.    Based on the information set forth above, the undersigned affiant submits that there is probable cause to believe that ISMAEL WAZIRY conspired with QUDRAT WAZIRY, ABDUL JALIL WAZIRY, and others to traffic in counterfeit goods, in violation of Title 18, United States Code, Sections 371 and 2320.


_____
Detective Lavinia A. Quigley
Metropolitan Police Department


Sworn to before me and subscribed in my presence this _____ day of November 2005.


_____
United States Magistrate Judge
District of Columbia